UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARDY LOUIS, individually and on behalf of all others similarly situated, | Case No.:  3:24-cv-462 (BKS/ML) |
| Plaintiff, | |
| v. | **COMPLAINT** |
| AJAY GLASS & MIRROR CO., INC., JIM STATHOPOULOS, STEVE STATHOPOULOS, and DEAN STATHOPOULOS, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Gardy Louis ("Plaintiff"), individually and on behalf of all other similarly situated persons, by and through his undersigned counsel, alleges upon personal knowledge as to himself and upon information and belief as to other matters (which is based on, among other things, his experiences at Defendants' facilities, review of Defendants' records, conversations with Defendants' employees and investigation of his counsel), as follows:

## NATURE OF ACTION

1.      Plaintiff brings this action on behalf of himself and all other similarly situated current and former hourly paid and non-exempt employees ("Hourly Employees") of Ajay Glass & Mirror Co., Inc. ("Ajay Glass"), Jim Stathopoulos, Steve Stathopoulos, and Dean Stathopoulos (collectively, "Defendants") which, by virtue of their management and control over the wages and work of the Hourly Employees, are classified as "employers" under applicable labor law.

2.      Ajay Glass provides residential and commercial construction services throughout the Western and Northern Tiers of New York.  More specifically, Ajay Glass provides, *inter alia*, design, fabrication, and installation services, and, according to its website, markets itself as one of the largest glass subcontractors in the Northeastern US.

3.      Throughout the relevant time period, Defendants have employed approximately 100 or more Hourly Employees.

4.      As particularized below, Defendants have engaged in illegal and improper wage practices and policies that have deprived Hourly Employees of millions of dollars in wages and overtime compensation.  These practices include improperly compensating Hourly Employees based only upon their scheduled hours rather than the actual time they worked.

5.      Furthermore, Defendants failed to provide Hourly Employees with appropriate and accurate pay rate acknowledgement forms and weekly wage statements. These illegal practices and policies are uniform throughout Defendants' facilities and have been known to Defendants for years.

6.      For these reasons, Plaintiff brings this action on behalf of himself and other Hourly Employees to recover unpaid wages, overtime compensation, damages, penalties and reasonable attorneys' fees and costs under the Fair Labor Standards Act (the "FLSA") §§ 201, *et seq.*, and under McKinney's Labor Law (the "NYLL"), §§ 190, *et seq.*, 195(1), 195(3), §§ 650, *et seq.*, and 12 NYCRR § 142-2.2.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. §§ 201, *et seq*.

8.      This Court also has original jurisdiction over all claims in this action under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d).  This is a proposed class action in which: (a) there are 100 or more members in the proposed class; (b) at least some members of the proposed class have a different citizenship from the Defendants; and (c) the claims of the proposed class members exceed $5,000,000.00 in the aggregate.

9.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the NYLL

state law wage and hour claims because those claims derive from a common nucleus of operative fact.

10.     This Court has personal jurisdiction over Ajay Glass as it is an entity that is organized and existing under the laws of the State of New York, with its principal place of business located in New York, and which regularly transacts business in the State of New York. Additionally, Plaintiff's causes of action arise out of Ajay Glass' conduct in the State of New York.

11.     This Court has personal jurisdiction over Jim Stathopoulos as he is a resident of the State of New York.  This Court also has personal jurisdiction over Jim Stathopoulos because Plaintiff's causes of action against him arise out of and relate to his systemic and continuous contact with the forum state, including his ownership interest in Ajay Glass. Among other things, Jim Stathopoulos has purposefully availed himself of the privilege of conducting activities within this District, including through his ownership interest in Ajay Glass, such that maintenance of this action against Jim Stathopoulos in this District does not offend traditional notions of fair play and substantial justice.

12.     This Court has personal jurisdiction over Steve Stathopoulos as he is a resident of the State of New York.  This Court also has personal jurisdiction over Steve Stathopoulos because Plaintiff's causes of action against him arise out of and relate to his systemic and continuous contact with the forum state, including his ownership interest in Ajay Glass. Among other things, Steve Stathopoulos has purposefully availed himself of the privilege of conducting activities within this District, including through his ownership interest in Ajay Glass, such that maintenance of this action against Steve Stathopoulos in this District does not offend traditional notions of fair play and substantial justice.

13.     This Court has personal jurisdiction over Dean Stathopoulos as he is a resident of

the State of New York. This Court also has personal jurisdiction over Dean Stathopoulos because Plaintiff's causes of action against him arise out of and relate to his systemic and continuous contact with the forum state, including his ownership interest in Ajay Glass. Among other things, Dean Stathopoulos has purposefully availed himself of the privilege of conducting activities within this District, including through his ownership interest in Ajay Glass, such that maintenance of this action against Dean Stathopoulos in this District does not offend traditional notions of fair play and substantial justice.

14.    Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## **THE PARTIES**

### **Plaintiff**

15.    Plaintiff, Gardy Louis, is a resident of Binghamton, New York and is a current non-exempt hourly employee of Defendants.

16.    More specifically, Plaintiff was hired by Ajay Glass in June 2023 and is employed as a window glazier. Throughout his employment, Plaintiff has been a full time Hourly Employee and paid an hourly rate of $17.00 per hour. Plaintiff's job duties as a window glazier include, among other things, cutting, shaping, and installing glass in windows and doors, including preparing window openings and frames, installing windows, and installing handrails with specialty glass.

17.    Throughout his employment, Plaintiff has been scheduled to work at least 40 hours each week. Specifically, Plaintiff is primarily scheduled to work from 7:00 a.m. to 3:00 p.m., five days per week (Monday through Friday). In reality, however, and as further discussed herein,

Plaintiff routinely works in excess of 40 hours in a given week.

18.    Plaintiff consistently works before and/or after his scheduled shift, but is not properly compensated for all hours worked, including overtime at the applicable rate of one and one-half times his regular hourly rate.

19.    As a window glazier, Plaintiff cannot exercise independent discretion, judgment or control over the daily and overall operation of the areas in which he works.  Plaintiff cannot hire or fire other Hourly Employees.  Plaintiff also cannot pick and choose a particular post during any of his given shifts, but rather he is assigned a particular post by his supervisors.  Despite this lack of independent discretion, through the entirety of his employment, Plaintiff was and continues to be deprived compensated for all hours worked.

20.    Specifically, throughout Plaintiff's employment, he was asked to and performed essential work prior to the beginning of his scheduled shift as well as after the end of his scheduled shift.  However, Plaintiff was only compensated based on his scheduled hours, rather than the actual hours he spent working on Defendants' behalf.

21.    To this end, Plaintiff's supervisors instructed him to record at the end of each workweek only his scheduled hours worked on a sign-in sheet even though Plaintiff worked well before and after his scheduled hours. Specifically, Plaintiff is instructed to record a flat 8 hours each day on his sign-in sheet, despite regularly working in excess of 8 hours per day.

22.    Indeed, at least 2-3 times per week, Plaintiff arrives to work between five to 10 minutes prior to the start of his scheduled shift and immediately begins performing job-related duties, such as picking up equipment and receiving assignments for the day from his supervisor, but he is only paid as if he begins work at 7:00 a.m.

23.    Additionally, Plaintiff often works five to 15 minutes beyond the end of his

scheduled shift, performing work during this post shift interval. However, he was compensated as if he stopped working at 3:00 p.m.

24.     As a result of Defendants' improper schedule-based pay practices, Plaintiff routinely worked but was not compensated for at least 15 to 30 in a given day.

25.     By way of example, during the Summer of 2023, Plaintiff worked in excess of 40 hours during numerous work weeks, performing work before and after his scheduled shifts, but was only compensated based on his scheduled hours.  During these weeks, like all other weeks worked by Plaintiff, he began and stopped working earlier or later than his scheduled shift, oftentimes 10-15 minutes earlier or later than his scheduled shift, and immediately began performing his essential work duties, but was compensated based on his scheduled hours rather than the hours actually worked.

26.     More specifically, during the pay periods from August 6, 2023, to August 12, 2023 and January 7, 2024 to January 13, 2024, Mr. Louis began work approximately five to ten minutes before the start of his scheduled shift on at least one to three occasions during those weeks, but was compensated only based on his scheduled start time of 7:00 a.m. During these same pay periods, Mr. Louis worked five to ten minutes after 3:00 p.m. on at least one to three occasions, but was only compensated based on his scheduled end time of 3:00 p.m. As a result, during these weeks, just like many others, Mr. Louis worked 10-40 additional minutes, including hours in excess of 40 hours in a week, but was not paid any additional straight or overtime for these additional hours worked.

27.     By way of further example, from November 2023 to December 2023, Plaintiff was required to work at a particular jobsite at Cornell University, but was not paid for all hours worked. Specifically, during this period, Plaintiff was scheduled to work 40-hour work weeks from 6:30

a.m. to 4:30 p.m., four days per week. However, during this period, Plaintiff was required to be in the company parking lot at 6:15 a.m. every day to board a bus that would transport him from Binghamton to Cornell University. At the end of the shift, the bus would return Plaintiff and other Hourly Employees to Binghamton, which would typically arrive at 4:45 p.m.  However, Defendants only compensated Plaintiff for his scheduled hours (*i.e.*, 6:30 a.m. to 4:30 p.m.), resulting in 30 minutes of uncompensated work every day for at least two months.

28.    Notably, Plaintiff was not permitted to drive himself to Cornell University or arrange for other transportation to the job site.  Instead, Plaintiff was required to use the transportation arranged by Defendants, which resulted in significant underpayments to Plaintiff and other Hourly Employees.

29.    Plaintiff was engaged in essential and integral work on the Defendants' behalf during this and all other pre- and post-shift periods in which he was working but not compensated. Work performed during the pre- and post-shift periods include some or all the job duties referenced above. This pre- and post-shift work was significant, integral and indispensable to the performance of job-related duties, was not a *de minimis* task or request, and was predominantly for the Defendants' benefit.

30.    Plaintiff's managers and supervisors were well aware that Plaintiff routinely worked before and/or after the start of his scheduled shifts, but did nothing to ensure Plaintiff was paid for this time.  In fact, Plaintiff's supervisors, including Chris Bolger, knew that Plaintiff was performing work before and after his scheduled shifts, but did nothing to rectify the situation or compensate Plaintiff for his time.

31.    Other Hourly Employees were likewise instructed to record their scheduled hours, rather than their actual hours worked on sign-in sheets despite routinely working hours for

Defendants before and/or after their scheduled shifts.

32.     Thus, because of Defendants' improper compensation policies and practices, and as described more fully below, Plaintiff and all other Hourly Employees were deprived of wages as required by the FLSA and NYLL, including straight and overtime compensation.

33.     Finally, Defendants failed to provide Plaintiff with proper pay rate acknowledgment forms at the commencement of his employment as required under NYLL §195(1), nor was Plaintiff provided with appropriate weekly wage statements as required by NYLL §195(3).  Specifically, because Defendants failed to compensate Plaintiff for all hours worked, the pay statements provided to Plaintiff were inaccurate and incomplete, including failing to provide the correct number of hours worked and the correct amount of pay owed.  The requirement that employers, including Defendants, provide Plaintiff with accurate wage notices and wage statements is meant to protect Plaintiff's and employees' interest in being paid what they are owed.  Plaintiff was harmed as a direct result of Defendants' failure to provide accurate weekly wage statements, including hindering Plaintiff's ability to determine whether he was being compensated for all hours worked.

**<u>Defendants</u>**

34.     Ajay Glass is a privately held corporation conducting business in the Northern District of New York. Ajay Glass was established under the laws of New York and maintains its principal place of business in 101 North Street, Canandaigua, New York 14424.

35.     According to its website, Ajay Glass provides, among other things, window and mirror design, fabrication, and installation services throughout the Northeast of the United States. Ajay Glass further markets itself as one of the largest glass subcontractors in the Northeastern US. Throughout the relevant time period, Ajay Glass has employed approximately 100 or more current

and former Hourly Employees.

36.     Jim Stathopoulos is the Chief Executive Officer of Ajay Glass.  Upon information and belief, Jim Stathopoulos maintains an ownership interest in Ajay Glass, and has the power and ability to set and modify the terms and conditions of Hourly Employees' employment with Ajay Glass.

37.     Steve Stathopoulos is the President and COO of Ajay Glass.  Upon information and belief, Steve Stathopoulos maintains an ownership interest in Ajay Glass, and has the power and ability to set and modify the terms and conditions of Hourly Employees' employment with Ajay Glass.

38.     Dean Stathopoulos is the Executive vice president of Ajay Glass.  Upon information and belief, Dean Stathopoulos maintains an ownership interest in Ajay Glass, and has the power and ability to set and modify the terms and conditions of Hourly Employees' employment with Ajay Glass.

## FACTUAL ALLEGATIONS

### Background

39.     Throughout the relevant period, Defendants have employed approximately 100 or more current and former Hourly Employees.

40.     Defendants hired Plaintiff and all other Hourly Employees and promised to pay hourly wages for all hours worked.  Full-time Hourly Employees are paid hourly wages based upon their job description and tenure that range between minimum wage and approximately $50.00 per hour and have a standard workweek of 40 hours.

41.     Hourly Employees are required to record their scheduled hours on sign-in sheets at the conclusion of each week, and are specifically instructed solely to record their scheduled hours

(or the total number of hours per shift based on their scheduled hours) and not the actual time they spent working before and/or after their scheduled shifts.

42.    Defendants' improper schedule-based pay policies and practices apply to all Hourly Employees, regardless of their job title, duties, responsibilities, or department.

43.    Defendants' management personnel know or have reason to know that Hourly Employees are only compensated for pre-scheduled hours and that Hourly Employees routinely perform worked before and/or after their scheduled shifts and are therefore not compensated for all hours worked, including at the applicable overtime rate for hours worked in excess of 40 hours in a week.

44.    Defendants have a policy and practice of unlawfully penalizing Hourly Employees who start and perform work before their shifts are scheduled to begin and perform work after the end of their scheduled shift before they end work, despite requiring that Hourly Employees perform such pre- and post-shift work.  Specifically, Defendants automatically penalize an Hourly Employee by only paying Hourly Employees based on the start or end of their scheduled shifts, even though they are performing job-related duties between when they actually start/stop working and when they are scheduled to work.  These job-related duties are performed at the request of Chiefs, Managers, Supervisors, Directors, and other superiors who know that Hourly Employees will not be paid for this time and instruct Hourly Employees to begin or complete tasks within the unpaid schedule-based rounding window.

45.    For example, if an Hourly Employee is scheduled to end his shift at 4:00 p.m., and he or she stops performing his or her work duties at 4:10 p.m., he or she is paid only until 4:00 p.m. even though he or she is performing work-related duties during that uncompensated 10-minute interval.  Similarly, if an Hourly Employee is scheduled to start his or her shift at 7:00 a.m.

and he or she starts work at 6:50 a.m., he or she is paid as if he or she is starting at 7:00 a.m. even though he or she is performing work-related duties during that uncompensated 10-minute interval.

46.     Although they request and are aware of the work Hourly Employees perform during these penalty periods, Defendants have knowingly implemented a time-keeping system to deny compensating Hourly Employees for some – if not all – of this unlawful schedule-based time spent on Defendants' behalf by only paying Hourly Employees for their scheduled hours.

**Defendants Failed to Provide Plaintiff and Hourly Employees With Timely and Appropriate Wage Statements and Pay Rate <u>Acknowledgement Forms as Required Under NYLL</u>**

47.     Defendants failed to provide Plaintiff and all other Hourly Employees with accurate wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; names of the employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

48.     Defendants failed to provide Plaintiff and all other Hourly Employees at the time of hiring and when they received their hourly rate of pay, a statement in English and the Hourly Employees' primary language, containing: the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employers' main office or principal place of business, and a mailing address if different; and the

telephone number of the employer, as required by NYLL §195(1).

49.    Specifically, because Defendants failed to compensate Plaintiff and Hourly Employees for all hours worked, the pay statements provided to Plaintiff and Hourly Employees were inaccurate and incomplete, including failing to provide the correct number of hours worked and the correct amount of pay owed. The requirement that employers, including Defendants, provide Plaintiff and Hourly Employees with accurate wage notices and wage statements is meant to protect Plaintiff's and Hourly Employees' interest in being paid what they are owed. Plaintiff and Hourly Employees were harmed as a direct result of Defendants' failure to provide accurate weekly wage statements, including hindering Plaintiff's ability to determine whether he was being compensated for all hours worked and whether he was being compensated at the appropriate rate of pay. As a result of Defendants' violation of NYLL §§ 195(1) and 195(3), Plaintiff and Hourly Employees were undercompensated for years.

50.    Accordingly, Plaintiff seeks certification of the following classes of Hourly Employees:

> All Hourly Employees who are or were employed by Defendants within the three years (FLSA Collective Class) or six years (New York Class) preceding the filing of this action and who were: (a) not properly compensated for all work performed for Defendants, including for work performed prior to the start of their scheduled shifts or after the conclusion of their scheduled shifts; and/or (b) were not fully compensated for time worked over forty hours per week at overtime rates; and/or (c) not provided proper notice under NYLL §195(1) and NYLL §195(3).

**Defendants Exercise Control Over Ajay Glass' Wage Policies and Practices**

51.    The compensation policies of Defendants are centrally and collectively dictated, controlled, and ratified.  Additionally, Defendants have the power to control wage policies and practices of Plaintiff and Hourly Employees through their oversight of day-to-day operating procedures, control over Hourly Employee work schedules, ability to determine Hourly

Employees' rate of pay, and ability to control record-keeping practices.

52.    By virtue of their positions, roles and conduct as described herein, Ajay Glass, Jim Stathopoulos, Jim Stathopoulos, and Dean Stathopoulos are the joint employers of Plaintiff and class members within the meaning of the FLSA and NYLL and are one and the same for the purposes of federal and state labor law liability.

### FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS

53.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

54.    Plaintiff brings this FLSA collective action on behalf of himself and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, on behalf of the aforementioned FLSA Collective.

55.    Excluded from the FLSA Collective are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Defendants.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the FLSA Collective.

56.    Plaintiff is unable to state the exact number of Hourly Employees within the FLSA Collective without discovery of Defendants' books and records but estimates that the FLSA Collective exceeds 100 individuals.

57.    Defendants improperly benefited from Plaintiff's and the FLSA Collective members' uncompensated work.

58.    Defendants' unlawful conduct has been widespread, repeated and consistent. Moreover, Defendants' conduct was willful and in bad faith and has caused significant damages to Plaintiffs and the FLSA Collective Class.

59.    Defendants are liable under the FLSA for failing to properly compensate Plaintiffs

and the FLSA Collective Class, and, as such, notice should be sent to the FLSA Collective Class. There are numerous similarly situated, current and former Hourly Employees who have been denied wages in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the action. Those similarly situated Hourly Employees are known to Defendants and are readily identifiable through Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

60.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

61.    Plaintiff brings this action on his own behalf and as a class action pursuant to Article 9 of New York Civil Practice Law and Rules on behalf of the aforementioned New York Class.

62.    Excluded from the New York Class are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Defendants. Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the New York Class.

63.    Defendants operate a construction company, employing over 100 Hourly Employees in New York during the relevant period and systematically fails to refuse to pay their Hourly Employees for all compensable hours worked. The members of the New York Class are so numerous that joinder of all members in one proceeding is impracticable.

64.    Plaintiff's claims are typical of the claims of other New York Class members because Plaintiff was a non-exempt hourly-wage Hourly Employee who was not compensated for work performed at Defendants' request both before his scheduled shift and after the conclusion of his scheduled shift.

65.    Plaintiff and other New York Class members have sustained similar types of

damages as a result of Defendants' failure to comply with the NYLL.  Plaintiff and other New York Class members have been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

66.    Plaintiff will fairly and adequately protect the interests of the New York Class. Plaintiff has retained counsel competent and experienced in complex class action and wage and hour litigation.  There is no conflict between Plaintiff and the New York Class.

67.    Common questions of law and fact exist as to the New York Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

    (a)    Whether Defendants failed and/or refused to pay Plaintiff and the New York Class for all of the compensable time that they worked for Defendants while before and/or after the start of their scheduled shifts;

    (b)    Whether Defendants failed to keep true and accurate time records for all hours worked by its Hourly Employees as required by New York Labor Law §§ 190 *et seq.* and 650 *et seq.*;

    (c)    Whether Defendants failed to provide appropriate and accurate pay rate acknowledgement forms and weekly wage statements as required by New York Labor Law §§ 195(1) and 195(3);

    (d)    Whether Defendants correctly compensated members of the New York Class for hours worked in excess of forty per workweek;

    (e)    Whether Defendants correctly compensated members of the New York Class for all uncompensated straight time hours worked under forty per workweek;

    (f)    Whether Defendants failed to comply with the posting and notice requirements

of the NYLL;

(g)  Whether Defendants engaged in a pattern and/or practice in New York of forcing, coercing, and/or permitting Plaintiff and New York Class members to perform work for Defendants' benefit which was not compensated;

(h)  Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(i)  The nature and extent of class-wide injury and the measure of damages for those injuries.

68.    Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail.  Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  Members of the New York Class are readily identifiable from Defendants' own records.

69.    Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual members of the New York Class that would establish incompatible standards of conduct for Defendants.

70.    Without a class action, Defendants will retain the benefit of their wrongdoing and will continue a course of action that will result in further damages to Plaintiff and the New York Class.

71.    Plaintiff intends to send notice to all members of the New York Class to the extent required by New York C.P.L.R. § 904.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(On Behalf of Plaintiff and the FLSA Collective)**

72.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

73.    At all relevant times, Defendants have been, and continue to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed and continue to employ, Hourly Employees, including Plaintiff and each of the members of the FLSA Collective.

74.    Plaintiff consents in writing to be a part of this action pursuant to FLSA, 29 U.S.C. § 216(b), and attached hereto as **Exhibit A** is a copy of Plaintiff's Opt-in Consent Form.  As this case proceeds, it is likely that other individuals will sign consent forms and join as opt-in plaintiffs.

75.    The FLSA requires each covered employer such as Defendants to compensate all non-exempt hourly employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.  The FLSA also requires each covered employer to pay the minimum wage for all hours worked.

76.    Plaintiff and the members of the FLSA Collective Action were and are entitled to be paid minimum wage and overtime compensation for all hours worked.

77.    Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiff and the members of the FLSA Collective for all of their hours worked.

78.    By failing to compensate Plaintiffs and the members of the FLSA Collective Class

for minimum wage and overtime compensation, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. § 201, *et seq.*

79.    By only paying FLSA Collective members based on their scheduled shifts, rather than the time spent working, Defendants have violated, and continue to violate the FLSA.

80.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

81.    Plaintiff, on behalf of himself and members of the FLSA Collective, seeks damages in the amount of their unpaid wages and overtime compensation, interest, and such other legal and equitable relief as the Court deems just and proper.

82.    Plaintiff, on behalf of himself and the FLSA Collective, seeks recovery of attorneys' fees and costs, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**Violations of New York Labor Law – Nonpayment of Straight Wages**
**§§ 190 *et seq.* and 650 *et seq.* and 12 NYCRR 142-2.1 and 142-2.2**
**(On Behalf of Plaintiff and the New York Class)**

83.    The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

84.    Pursuant to New York Labor Law §§ 190, 191, 193, 198 and 652, Defendants have willfully failed to pay the straight wages due as set forth in the preceding paragraphs of this Complaint to Plaintiff and the New York Class in violation of New York Labor Law §§ 190, 191, 193, 198 and 652 and 12 N.Y.C.R.R. 142-2.1 and 142-2.2.

85.    Defendants were not and are not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiff's and the New York Class's wages that concern this lawsuit.

86.    Defendants were not authorized by Plaintiff or any New York Class members to

withhold, divert or deduct any portion of their unpaid wages which are the subject of this lawsuit.

87.    Pursuant to New York Labor Law § 198, employers such as Defendants who intentionally fail to pay an Hourly Employee wages in conformance with New York Labor Law shall be liable to the Hourly Employee for the wages or expenses that were intentionally not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

88.    Defendants have violated the New York Labor Law by failing to pay Plaintiffs and the members of the New York Class for all compensable time and by failing to pay Plaintiffs and the members of the New York Class for the straight time worked at the established rate.

89.    Plaintiff, on behalf of himself and the New York Class, seek the amount of underpayments based on Defendants' failure to pay straight wages of at least the minimum wage for all hours worked, as provided by the New York Labor Law, and such other legal and equitable relief as the Court deems just and proper.

90.    Plaintiff, on behalf of himself and the New York Class, seek all liquidated and punitive damages and penalties available under the NYLL.

**THIRD CAUSE OF ACTION**
**New York Labor Law – Unpaid Overtime**
**(On Behalf of Plaintiff and New York Class)**

91.    The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

92.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations 12 N.Y.C.R.R. 142-2.1 and 142-2.2 apply to Defendants and protect Plaintiff and the members of the New York Class.

93.    Defendants have failed to pay Plaintiff and members of the New York Class overtime wages to which they are entitled under the NYLL and the supporting New York State

Department of Labor Regulations.

94.     By Defendants' knowing and/or intentional failure to pay Plaintiff and the members of the New York Class overtime wages for hours worked in excess of forty hours per week, they have willfully violated NYLL Article 19, §§ 650 *et. seq.*, and the supporting New York State Department of Labor Regulations.

95.     Due to Defendants' violations of the NYLL, Plaintiff and the members of the New York Class are entitled to recover from the Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

96.     Plaintiff, on behalf of himself and the New York Class, seek all liquidated and punitive damages and penalties available under the NYLL.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Violation of the Notice and Recordkeeping Requirements**
**(On Behalf of Plaintiff and the New York Class)**

97.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

98.     Defendants have failed to provide Plaintiff and all Hourly Employees with a written notice, in English and in Spanish, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

99.     Defendants are liable to Plaintiff and each Hourly Employee in the amount of

$5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Violation of the Wage Statement Provisions
### (On Behalf of Plaintiff and the New York Class)

100.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

101.     Defendants have not provided Plaintiff and all Hourly Employees a statement with each payment of wages listing each of the following: allowances, if any, claimed as part of the minimum wage; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL 195(3).

102.     Indeed, because Defendants failed to compensate Plaintiff and Hourly Employees for all hours worked, the pay statements provided to Plaintiff and Hourly Employees were inaccurate and incomplete, including failing to provide the correct number of hours worked and the correct amount of pay owed. Plaintiff and Hourly Employees were harmed as a direct result of Defendants' failure to provide accurate weekly wage statements, including hindering Plaintiff's ability to determine whether he was being compensated for all hours worked and whether he was being compensated at the appropriate rate of pay. As a result of Defendants' violation of NYLL § 195(3), Plaintiff and Hourly Employees were undercompensated for years.

103.     Defendants are liable to Plaintiff and each Hourly Employee in the amount of $5,000, together with costs and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Gardy Louis, individually and on behalf of the FLSA Collective, seeks the following relief:

A.     Designation of this action as a collective action on behalf of the FLSA Collective

(asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Plaintiff Consent Forms pursuant to 29 U.S.C. § 216(b);

      B.      Designation of Plaintiff Gardy Louis as the Representatives of FLSA Collective;

      C.      Appointment of Plaintiff's counsel as Lead Counsel for the FLSA Collective;

      D.      On the First Cause of Action (Violation of FLSA):

           1.      An award to Plaintiff and the members of the FLSA Collective of damages, according to proof, including but not limited to unpaid overtime wages and lost benefits, to be paid by the Defendants;

           2.      An award to Plaintiff and the members of the FLSA Collective of attorneys' fees pursuant to 29 U.S.C. § 216, as well as an award of costs incurred herein, including expert fees;

           3.      An award of pre-judgment and post judgment interest, as provided by law;

           4.      An award of injunctive relief to prevent against future wage and hour violations; and

           5.      All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiff Gardy Louis, individually and on behalf of the New York Class, seek the following relief:

      A.      Certification of this action as a class action under Rule 23 and the appointment of Plaintiff's counsel as Lead Counsel for the New York Class;

      B.      Designation of Plaintiff Gardy Louis as the Representative of New York Class;

      C.      On the Second Cause of Action (Violation of New York Labor Law – Nonpayment

of Straight Wages):

       1.     An award to Plaintiff and the members of the New York Class of damages for the amount of unpaid overtime, in addition to interest subject to proof; and

       2.     An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law.

       D.     On the Third Cause of Action (Violation of New York Labor Law – Unpaid Overtime):

       1.     An award to Plaintiff and the members of the New York Class of damages for the amount of unpaid overtime, in addition to interest subject to proof; and

       2.     An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law.

       E.     On the Fourth and Fifth Causes of Action (Violation of New York Labor Law – Notice and Recordkeeping Requirements and Wage Statement Provisions):

       1.     An award to Plaintiff and members of the New York Class of Damages for violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d); and

       2.     An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to NYLL §§198(1-b), 198(1-d).

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

## **DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby directed to preserve all physical and electronic information

pertaining in any way to Plaintiff and Plaintiff's employment, to Plaintiff's cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, Instagram, LinkedIn, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

**NOTICE PURSUANT TO NEW YORK BUSINESS CORPORATIONS LAW § 630**

Defendants are hereby put on notice that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, they are hereby notified that Plaintiff, the FLSA Collective Class and the New York Class intend to charge and hold personally, jointly and severally liable, the ten largest shareholders of Ajay Glass, for all debts, wages, and/or salaries due and owing to Defendants' employees for services performed by them and Plaintiff has expressly authorized the undersigned, as his attorney, to make this demand on his behalf.

Dated: New York, New York
         April 2, 2024

McLAUGHLIN & STERN, LLP

By: _____
         Brett Gallaway, Esq.
         Lee Shalov, Esq.
         Jason Giaimo, Esq.
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-1100
bgallaway@mclaughlinstern.com
lshalov@mclaughlinstern.com
jgiaimo@mclaughlinstern.com

*Attorneys for Plaintiff, the FLSA Collective and the New York Class*