UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GARDY LOUIS and SHERRON
SAWYER, individually and on
behalf of all others similarly situated,

              Plaintiffs,

              -v-                                            3:24-CV-00462 (AJB/ML)

AJAY GLASS & MIRROR CO., *et al.*,
              Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| MCLAUGHLIN & STERN, LLP<br>Attorneys for Plaintiffs<br>260 Madison Avenue<br>New York, NY 10016 | BRETT R. GALLAWAY, ESQ.<br>JASON GIAIMO, ESQ.<br>LEE S. SHALOV, ESQ. |
| WOODS OVIATT GILMAN LLP<br>Attorneys for Defendants<br>1900 Bausch & Lomb Place<br>Rochester, NY 14604 | WILLIAM G. BAUER, ESQ. |

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>DECISION & ORDER</u>**

**I.    INTRODUCTION**

Plaintiffs are current and former hourly employees of defendants Ajay Glass & Mirror Company, Jim Stathopoulos, Steve Stathopoulos, and Dean Stathopoulos (collectively "defendants"). They allege that defendants have engaged in a policy and practice of not paying plaintiffs and other similarly situated employees for all straight and overtime hours worked in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

Before the Court is plaintiffs' motion for an order conditionally certifying a collective action and approving plaintiffs' proposed form and manner of notice to potential opt-in plaintiffs. For the reasons below, plaintiffs' motion is **GRANTED IN PART and DENIED IN PART**.

## II.  BACKGROUND

Defendant Ajay Glass & Mirror Company ("Ajay Glass") is "one of the largest glass subcontractors in the Northeastern United States[.]"  Pls.' Mot. for Conditional Certification, Dkt. No. 62-14 at 10.  The individual defendants possess ownership interests in the company. *See* Am. Compl., Dkt. No. 24 ¶¶ 11–13.  Defendants employ an array of workers and tradesmen. *See* O'Shell Depo., Dkt. No. 62-12 at 6, 11.

The full range of these roles is unclear, as position- or trade-specific titles are seemingly not used by defendants, though some are named in connection with this action: for instance, glaziers, ironworkers, fabricators, and drivers.  *See* Dkt. No. 62-14 at 12; *see also* Dkt. No. 62-12 at 6 ("Q: What are the different job titles of the non-exempt employees[?]  A: Titles of non-exempt employees—[t]hey're going to be foremen, journeymen, and apprentices.  Q: [T]he journeymen and the apprentices, those can be trade specific.  Right?  A: Correct.").

Regardless, whether in the "shop" or "field," these workers all are considered "non-exempt[,] hourly employees[.]"  Dkt. No. 62-12 at 4; *see id.* at 8 ("Q: [O]f the non-exempt employees, what is the . . . percentage who work in the shop compared to in the field on a . . . daily basis?  A: [I] would say 25 percent in the shop versus 75 percent in the field."); *id.* at 9 ("Q: [A]nd . . . the non-exempt employees, they're all hourly regardless of whether they work in the shop or . . . field?  A: Correct.").

Named plaintiffs Gardy Louis and Sherron Sawyer and opt-in plaintiff Jay Printup were glaziers for defendants: Louis from June 2023 to April 2024; Sawyer between October 2018 and

November 2019; and Printup from September 2009 to February 2020. *See* Louis Decl., Dkt. No. 62-1 ¶ 2; Sawyer Decl., Dkt. No. 62-2 ¶ 2; Printup Decl., Dkt. No. 62-4 ¶ 1. Opt-in plaintiff Justin Bryant drove and managed shipping services for defendants from April 2021 to May 2022. *See* Bryant Decl., Dkt. No. 62-3 ¶ 1. And between 2021 and 2024, opt-in plaintiff Gary Wallace was an ironworker for defendants. *See* Wallace Decl., Dkt. No. 62-5 ¶ 1. Each was a non-exempt, hourly employee. *See* Dkt. No. 62-1 ¶ 1; Dkt. No. 62-2 ¶ 2; Dkt. No. 62-3 ¶ 1; Dkt. No. 62-4 ¶ 2; Dkt. No. 62-5 ¶ 1.

Plaintiffs allege that defendants maintain timekeeping policies and practices whereby hourly employees are not compensated for all hours worked, including applicable overtime rates. *See* Dkt. No. 24 ¶ 55. Specifically, they claim that defendants "automatically penalize" hourly employees by paying based on the hours they were scheduled, not for time worked. *See id.* ¶ 56; *see, e.g., id.* ¶ 57 ("For example, if an Hourly Employee is scheduled to end his shift at 4:00 p.m., and he stops performing his work duties at 4:10 p.m., he is paid only until 4:00 p.m."); *see also id.* ¶ 55 ("[H]ourly employees . . . therefore [are] not compensated for all hours worked, including at the applicable overtime rate for hours worked in excess of 40 hours in a week.").

## III. STANDARD OF REVIEW

"The principal congressional purpose in enacting the [FLSA] was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 402 (2d Cir. 2019) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)).

The Act "establishes minimum wage, overtime pay, recordkeeping, and other employment standards." *Osorio v. Vector Structural Pres. Corp.*, 2024 WL 4607175, at *3 (E.D.N.Y. Oct. 28, 2024). "Section 216(b) of the FLSA provides a private right of action to recover unpaid overtime compensation 'against any employer . . . by any one or more employees for and [o]n behalf of himself or themselves and other employees similarly situated.'" *Batten v. Citi Gen. Hardware, Inc.*, 2025 WL 2751149, at *1 (E.D.N.Y. Sept. 29, 2025).

Unlike a Rule 23 class, members of an FLSA collective action must affirmatively "opt in." *Wilk v. Quality Installations of NY, Inc.*, 724 F. Supp. 3d 76, 83 (E.D.N.Y. 2024); s*ee* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *see also Cooke v. Frank Brunckhorst Co., LLC*, 722 F. Supp. 3d 127, 134 (E.D.N.Y. 2024) ("Under the FLSA[,] 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees[.]") (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013)).

**IV.   DISCUSSION**

Plaintiffs seek conditional certification of an FLSA collective comprised of "all current and former non-exempt hourly employees who were employed by Defendants . . . from April 2, 2021, through the trial of this action[.]" Not. Mot., Dkt. No. 62 at 1.

"The Second Circuit has endorsed a two-step method to certify FLSA collective actions." *Zhao v. Surge Priv. Equity LLC*, 2023 WL 3477591, at *3 (S.D.N.Y. May 16, 2023); *see Son v. Hand Hosp.*, 768 F. Supp. 3d 526, 538 (S.D.N.Y. 2025); *see also Glatt v. Fox Searchlight*

4

*Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) ("In *Myers*, we endorsed a two-step process for certifying FLSA collective actions.") (citing *Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)).

"First, a motion for conditional certification is filed and the Court 'must determine whether there are any 'similarly situated' potential plaintiffs who should receive notice of the pending action and have an opportunity to opt in.'" *Aboah v. Fairfield Healthcare Servs., Inc.*, 662 F. Supp. 3d 192, 202 (D. Conn. 2023) (quoting *Gui Zhen Zhu v. Matsu Corp*, 424 F. Supp. 3d 253, 263 (D. Conn. 2020)).

"To achieve conditional certification, plaintiffs must 'make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.'" *Laskowski v. St. Camillus Nursing Home Co., Inc.*, 2024 WL 4132198, at *7 (N.D.N.Y. Sept. 10, 2024) (Hurd, J.) (quoting *Myers*, 624 F.3d at 555) (internal quotations omitted). "This modest factual showing cannot be satisfied via 'unsupported assertions,' but is a forgiving standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." *Provencher v. Bimbo Bakeries USA, Inc.*, 2024 WL 5197291, at *3 (D. Vt. Apr. 2, 2024).

"Where conditional certification is warranted, the Court, acting within its discretion, may also order notice to potential opt-in plaintiffs." *Bryan v. Patriot LLC*, 2025 WL 1730192, at *3 (N.D.N.Y. June 23, 2025) (Hurd, J.); *see also Brickey v. Dolgencorp., Inc.*, 272 F.R.D. 344, 346–47 (W.D.N.Y. 2011) ("Because a collective action requires written consent from the opt-in plaintiffs, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, in order to ensure that the drafting and distribution of the notice is timely, accurate and informative.") (internal quotations and citation omitted).

"At the second stage, the Court will, on a fuller record, decide whether the collective action 'may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.'" *Laskowski*, 2024 WL 4132198, at *2 (quoting *Myers*, 624 F.3d at 555); *see Mizzero v. Albany Med Health Sys.*, 2024 WL 4343584, at *3–4 (N.D.N.Y. Sept. 30, 2024) (Suddaby, J.). If the record reveals that they are not, "[a] defendant can then move to decertify" the collective. *Davella v. Ellis Hosp., Inc.*, 2024 WL 98352, at *1 (N.D.N.Y. Jan. 9, 2024) (D'Agostino, J.); *see Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 123 (S.D.N.Y. 2011) (citing *Myers*, 624 F.3d at 554–55).

"In some cases where parties have completed, or substantially completed, conditional collective certification discovery, some courts have applied a 'modest plus' standard of review." *Tay v. New York & Presbyterian Hosp.*, 2024 WL 4286226, at *6 (S.D.N.Y. Sept. 24, 2024) (internal alterations and citations omitted). "[T]he difference between the original and 'modest-plus' standard[ ] is whether the court considers only the pleadings and attached documents, or those documents plus the defendant's opposing materials." *Martinez v. Elegante Servs., Inc.*, 2025 WL 3281405, at *3 (S.D.N.Y. Nov. 25, 2025) (quoting *Tay*, 2024 WL 4286226, at *6).

"However, even under the modest-plus rubric, courts do not weigh the merits of the underlying claims." *Carollo v. United Cap. Corp.*, 528 F. Supp. 3d 37, 61 (N.D.N.Y. 2021) (Hurd, J.) (citing *Julian v. MetLife, Inc.*, 298 F. Supp. 3d 699, 703 (S.D.N.Y. 2018)).

Defendants wish for the Court to apply the "modest plus" standard in its review of the pending motion. *See* Dkt. No. 65-7 at 19 ("Where, as here, discovery has been extensive, courts in this Circuit have emphasized the need for more than generalities or speculation—applying the heightened, Modest Plus standard.") (citing *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 481–82 (S.D.N.Y. 2016)).

6

"The Court finds it unnecessary to apply the modest-plus standard, as the Second Circuit has not endorsed such a standard." *Davella*, 2023 WL 5367791, at *4. "However, even if the Court utilized the modest-plus standard, [p]laintiffs meet their burden as the allegations, testimonies, and evidence discussed [below] support their claims that Defendant engaged in a practice of not compensating employees for off-the-clock work[.]" *Id.*

### A. Commonality

Defendants argue that the pending motion should be denied, as "[p]laintiffs fail to make the modest showing required to demonstrate that they were subject to a common policy or plan[.]" Defs.' Resp., Dkt. No. 65-7 at 19. However, "[a]t this stage, even minimal information, such as a pleading or affidavit, is sufficient to allege a common policy affecting similarly situated employees." *Davella*, 2023 WL 5367791, at *5; *id.* ("[C]ourts have routinely found that the allegations in the pleadings and the personal observations of one plaintiff's affidavit are sufficient to make the modest factual showing necessary to conditionally certify [a] class[.]") (quoting *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 66 (E.D.N.Y. 2016)) (internal quotations and citation omitted).

Defendants believe that plaintiffs' accounts are too "individualized and inconsistent" to evidence commonality. *See* Dkt. No. 65-7 at 16–17 ("Declarants held different job titles with distinct responsibilities [and] were members of different unions. Their work duties, schedules, and locations across New York . . . varied[.]"); *id.* at 14 ("The few specific allegations offered point not to a unifying company-wide policy, but to scattered, site-specific experiences that vary by foreman, job site, and job title.").

But "[p]otential plaintiffs may be deemed similarly situated for the purpose of preliminary certification under the FLSA despite not occupying the same positions or performing

the same job functions as long as they are subject to a common unlawful policy or practice." *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 694 (N.D.N.Y. 2015); *see also Morales v. Rochdale Vill. Inc.*, 2016 WL 11190525, at *6 (E.D.N.Y. Aug. 15, 2016) ("The fact that employees held different positions at different location does not prevent conditional certification.") (internal quotations and citation omitted); *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 348 (S.D.N.Y. 2017) ("Any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification, and even if dates of employment and hours worked are unique to each employee, that does not necessarily create dissimilarity under the FLSA[.]") (internal citations and alterations omitted). Furthermore, "at the conditional certification stage . . . [p]laintiffs need not show that 'all managers . . . [acted] in lockstep' . . . to make a modest factual showing that they were subject to a common policy or practice." *Amador v. Morgan Stanley & Co. LLC*, 2013 WL 494020, at *6 (S.D.N.Y. Feb. 7, 2013) (quoting *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 408–09 (S.D.N.Y. 2012)).

Whether tied to similar sham time-keeping processes or no process at all, plaintiffs allege they were subjected to the same unlawful payment scheme. Dkt. No. 62-1 ¶ 4 ("Throughout my employment[,] I was required to fill out a hard copy sign-in sheet to record my hours on a weekly basis[,] [and] I was specifically directed to only record my scheduled hours rather than all hours actually spent working."); Dkt. No. 62-1 ¶ 5 ("I regularly worked before and/or after my scheduled shift, but was not properly paid for all hours worked."); Dkt. No. 62-2 ¶ 5 ("During my employment[,] there was no timekeeping system in place. Rather, I was simply paid a fixed amount per day based on my scheduled hours, irrespective of the hours I actually worked."); Dkt. No. 62-3 ¶ 2 ("Throughout my employment, I was required to fill out sign-in sheets to record my hours. However, I was specifically directed to only record my scheduled

8

hours rather than all hours actually spent working."); Dkt. No. 62-4 ¶ 3 ("I was required to fill out hard copy sign-in sheets to record my hours. Rather than recording the precise amount of time I worked, I was directed to only record my scheduled hours on my sign-in sheet as a fixed, flat number."); Dkt. No. 62-5 ¶ 2 ("Throughout my employment, Defendants never tracked the amount of time I actually spent working even though I regularly arrived at work before my scheduled shift and immediately began performing my job responsibilities and regularly performed work after my scheduled shift, which my supervisor [] frequently demanded."); Dkt. No. 62-5 ¶ 6 ("Despite performing substantial work prior to the start of my scheduled shift, and after the conclusion of my scheduled shift, I was only paid based on my scheduled hours.").

Each plaintiff states that Ajay management directed or was complicit in these pay practices. *See* Dkt. No. 62-1 ¶ 7 ("My managers and supervisors . . . were well aware that I worked before and after the start and end of my scheduled shifts but did nothing to ensure I was paid for this time."); Dkt. No. 62-2 ¶ 8 ("My supervisors were aware that I was performing work for which I was not being compensated, but did nothing to ensure I was properly paid for that time."); Dkt. No. 62-3 ¶ 6 ("Defendants were well aware that I was performing work prior to the start of my shift and after the end of my shift, but did nothing to ensure I was compensated for this time worked."); Dkt. No. 62-4 ¶ 8 ("Defendants were well aware that I was performing work prior to the start of my shift and after the end of my shift, but never paid me for this time."); Dkt. No. 62-5 ¶ 7 ("Defendants were well aware that I was performing work prior to the start of my shift, but did nothing to ensure I was compensated for this time worked."). And plaintiffs assert reasonable belief that co-workers, several of whom they name specifically, were similarly subjected to these practices. *See, e.g.*, Dkt. No. 62-1 ¶ 8; Dkt. No. 62-2 ¶ 9; Dkt. No. 62-4 ¶ 9; Dkt. No. 62-5 ¶ 7.

To split hairs, defendants emphasize the "decentralized" nature of their "operation." *See* Dkt. No. 65-7 at 17 ("AJAY performs field work throughout the state."); *id.* at 21 ("[T]he record reveals only a patchwork of site-specific allegations[.]"). Even taking defendants' decentralized operations at face value, though, the Court does not see how that undercuts plaintiffs' allegations of a common illicit pay practice. Besides, as defendants acknowledge, "[c]rews rotate across job sites[.]" *Id.* at 17.

Moreover, although defendants deny knowledge of any illicit pay practice, executives affirm that the company's overtime policy and time-recording system were the same for hourly employees regardless of title or site location. *See, e.g.*, Stathopoulos Depo., Dkt. No. 62-11 at 4 ("All non-office employees use hourly timecards on a daily basis."); O'Shell Depo., Dkt. No. 62-12 at 21 ("Q: Employees are not directed to record the[ir] specific time in and out[,] [r]ight? They just record a fixed number of hours each day? A: Correct."); *see also* Dkt. No. 62-12 at 22 ("Q: [T[he hours that are submitted daily, they're always round . . . or whole numbers? A: I mean, it could be quarter hours. It could be half hours. So, it's not just whole numbers. No. Q: But it's not to the minute. Correct? A: No, it's not.").

Defendants also argue that "[e]ach individual . . . received overtime, thereby completely contradicting Plaintiffs' argument[.]" Dkt. No. 65-7 at 7; *see, e.g.*, *id.* at 8 ("[T]he proof of overtime pay analysis directly undermines and contradicts Plaintiffs' claim that AJAY employed a policy or procedure not to pay overtime."); *id.* at 15 ("Further, the payroll records contradict Plaintiffs' claim of a widespread failure to pay overtime[:] Discovery produced to Plaintiffs demonstrate that over 550 AJAY employees (approximately 75% of non-exempt employees), including Louis and all declarants, were paid overtime during their employment."); *id.* ("Several of these declarants received overtime in the same weeks they now allege systemic

underpayment[.]  This alone cuts against any claim of a uniform practice.  More fundamentally, it contradicts Plaintiffs' central theory: that employees routinely worked a straight, unbroken '8' hour day that did not reflect actual time worked.  If that were true, and those '8' hour entries were systematically underreported, employees would rarely – if ever – cross the 40-hour threshold to qualify for overtime.").

Yet "[t]his argument is beside the point."  *Amador*, 2013 WL 494020, at *8.  "The question for the Court is not whether Defendants paid *any* overtime to some of the Plaintiffs but whether they paid *all* overtime or had a policy of limiting the amount of overtime pay—through the explicit or implicit actions of their managers and supervisors—that [they] were entitled to receive."  *Id.* (citing *Hens v. ClientLogic Operating Corp.,* 2006 WL 2795620, at *5 (W.D.N.Y. Sept. 26, 2006)).

The mere fact that defendants paid overtime to hourly employees is "not dispositive or even relevant at the conditional certification stage."  *Amador*, 2013 WL 494020, at *8.  Plaintiffs have introduced evidence that the Court may credit at this stage indicating a scheme extending to all of defendants' hourly employees.

In sum, the Court finds that plaintiffs have sufficiently demonstrated a common *de facto* policy or practice.  Plaintiffs have likewise satisfied their minimal burden and may disseminate court-authorized notice to other potentially "similarly situated" members of the collective.

### B. Notice

Plaintiffs propose that notice be provided to prospective collective members "employed by Defendants beginning six years prior to the commencement of this lawsuit."  Dkt. No. 62-14 at 27.  Although plaintiffs acknowledge that "[t]he statute of limitations for bringing claims under the FLSA is two years for non-willful violations and three years for willful violations[,]"

*id.* (citing 29 U.S.C. § 255(a)), they contend "it is entirely appropriate to provide for notice extending to co-workers employed six years prior to the date the lawsuit was commenced because Plaintiffs' analogous NYLL claims for failure to pay overtime have a six-year statute of limitations." *Id.*

As the Court has not yet considered Rule 23 certification of plaintiffs' NYLL claims, it will confine notice to the three-year period.  *See, e.g.*, *Cooke*, 722 F. Supp. 3d at 142; *Munoz v. Grp. US Mgmt. LLC*, 348 F.R.D. 192, 207 (S.D.N.Y. 2025); *Franze v. Bimbo Foods Bakeries Distrib., LLC*, 2019 WL 1417125 at *4 (S.D.N.Y. Mar. 29, 2019); *Alvarez v. IBM Rests. Inc.*, 839 F. Supp. 2d 580, 586 (E.D.N.Y. 2012) (noting "growing trend" in the Eastern District had been to limit notice to three years, especially when there were not a significant number of potential plaintiffs).

Defendants request that defense counsel's contact information be added to the notice. *See* Dkt No. 65-7 at 22.  "The Court agrees with other courts in this Circuit, which have generally concluded that the contact information of defendants' counsel is appropriate for inclusion in a notice of collective action." *Cuaya v. VI Dev. Grp., LLC*, 2020 WL 5494371, at *10 (S.D.N.Y. Sept. 10, 2020) (collecting cases) (internal alterations omitted).  The notice of collective certification should include contact information for both plaintiffs' and defendants' counsel.

In turn, plaintiffs ask the Court to compel defendants to "furnish the names, last known physical addresses, last known email addresses and last known telephone numbers of those individuals in the collective action[.]"  Dkt. No. 62-14 at 7.  Defendants oppose, though provide no caselaw supporting their opposition.  *See* Dkt. No. 65-7 at 24–25.  The Court finds the request

reasonable, *see Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 465 (E.D.N.Y. 2014) (collecting cases), and will compel defendants to provide the requested information.

## V. CONCLUSION

Therefore, it is

**ORDERED** that

1. Plaintiffs' motion (Dkt. No. 62) is **GRANTED IN PART and DENIED IN PART**;

2. The Court **CONDITIONALLY APPROVES** the following putative FLSA collective:

> All current and former non-exempt hourly employees who were employed by Defendants Ajay Glass & Mirror Co., Jim Stathopoulos, Steve Stathopoulos, and Dean Stathopoulos (collectively, "Defendants") from April 2, 2021 through the date of trial.

3. Plaintiffs are **ORDERED** to submit a Proposed Publication Order, Consent to Join Form, and Notice of Lawsuit that comply with the above decision for the Court's approval within fourteen (14) days.

The Clerk of the Court is directed to terminate the pending motions.

**SO ORDERED.**

Dated: February 20, 2026

Utica, New York

Anthony J. Brindisi
U.S. District Judge